Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4970 | **DATE** | 4/2/2004 |
| **CASE TITLE** | Raymond Rivera Marquez vs. Normany Mineta | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to for summary judgment (11-1) is granted. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 0 2 2004 | |
| ✓ | Docketing to mail notices. | | | 23 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| | | 2004 APR -2 AM 7:50 | date mailed notice | |
| SLB | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAYMOND RIVERA MARQUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 03 C 4970 |
| v. ) | |
| ) | Judge George W. Lindberg |
| NORMAN Y. MINETA, Secretary of ) | |
| Department of Transportation, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

DOCKETED
APR 0 2 2004

Plaintiff Raymond Rivera Marquez's complaint alleges claims of discrimination based on age, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; and race and national origin, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Before the court is defendant's motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

**I. Factual Background**

The following facts are undisputed, unless otherwise noted.[1] Plaintiff was hired on February 25, 2001 as an Aviation Safety Inspector by the Federal Aviation Administration ("FAA"), an agency under defendant. Plaintiff was sixty-one years old when he was hired, and is Hispanic and Puerto Rican. Plaintiff had previously worked as an aviation mechanic, and worked as a mechanic for American Airlines from 1977 until his retirement in 1999. Plaintiff was recruited for the position with the FAA by Gerardo Martinez, a forty-one-year-old Hispanic

---

[1] Defendant's untimely response to plaintiff's statement of additional facts has been stricken. Accordingly, all properly supported, admissible material facts set forth in plaintiff's statement are deemed admitted. See LR 56.1(a).

of Puerto Rican and Mexican origin. Martinez became plaintiff's supervisor.

An Aviation Safety Inspector's duties include assuring that aircraft comply with federal aviation regulations; reporting deficiencies; investigating public complaints, congressional inquiries, and aircraft accidents; testifying in court; and evaluating air carriers, agencies, and operators for certification. These duties require analytical skills, as well as oral and written communication skills.

Inspectors must complete a one-year probationary period, during which they are assessed to determine whether their performance demonstrates fitness for continued employment. Training is given in three levels, by trainers who are also inspectors: in Level 1, the job function is explained to the trainee; in Level 2, the trainee observes the job function being performed; and in Level 3, the trainee performs the job function under supervision. The trainers submit monthly reports on each trainee, and Martinez meets with the trainers to discuss the trainees' progress. Martinez also has daily interaction on the job with trainers and trainees.

Donald Rigg was assigned to be plaintiff's primary trainer. Plaintiff was Rigg's first trainee. In plaintiff's first month of training, Rigg reported that plaintiff's performance was substandard. Specifically, Rigg reported that plaintiff did not grasp instructions readily, he was disorganized, and was a weak writer. Rigg felt that plaintiff's inability to retain information was a major problem. Rigg observed that plaintiff was "computer illiterate," that he took an unreasonably long time to document his work on the computer, that he was unable to follow Rigg's written directions on how to use the computer, that he was unable to follow sample training records or fill out his time card, and that he would forget what paperwork he had been given.

Plaintiff countered that Rigg often was unavailable to train him. Rigg frequently was required to travel to other cities. In addition, plaintiff's work hours overlapped with Rigg's for only part of the day, due to their different work schedules. Plaintiff complained that Rigg's absences had a negative effect on his training.

In plaintiff's second month of training, Rigg requested that another instructor evaluate plaintiff to see if there was something Rigg was missing. Martinez assigned Senior Inspector Sam Latorre to give plaintiff some training and evaluate him; Rigg remained plaintiff's primary trainer. Latorre reported to Martinez that plaintiff's oral and written communication skills were weak, and that plaintiff had difficulty retaining information. Latorre felt that plaintiff was the weakest inspector he had observed in the eleven years he had been on the job. Latorre advised Martinez that plaintiff might be able to succeed, but that it would require much more intensive training than was normally provided, and estimated that it would require two additional years of training.

To address plaintiff's problems using computers, plaintiff was enrolled in a computer instruction course. Plaintiff took at least three times as long as the others in the course to complete it. Plaintiff was also provided with a laptop computer on which to train at home.

In March 2001, fellow inspector David Dillon trained plaintiff twice. Dillon observed that plaintiff had difficulty understanding and retaining information, and that he did not understand computers. Dillon reported to Martinez that plaintiff had difficulty remembering how to perform simple tasks such as fueling a government car, even though he had been trained on the task the previous day.

Plaintiff also received some training from fellow inspector Clement Corpus. Corpus

observed that plaintiff seemed lost when he used different computer programs and that he did not improve with time.

At Martinez's direction, plaintiff took several computer courses that provide training for the inspection of aircraft from each of the carriers flying into O'Hare International Airport. According to defendant, plaintiff failed the courses several times, each time getting a computer specialist to reset the computer so that he could retake the course. Plaintiff took three or four days to satisfactorily complete a single one-hour course. Plaintiff denies that he ever failed any of the courses, explaining that he had been unable to complete the courses initially "due to computer difficulties."

Martinez met with plaintiff on April 6, 2001 to formally discuss plaintiff's problematic job performance; prior to that time, Martinez had informally given plaintiff negative feedback. Following the meeting, plaintiff gave Martinez a written rebuttal to the negative comments he had received at the meeting. When Martinez received the written rebuttal, he enrolled plaintiff in a writing course.

In April 2001, it took plaintiff three days to complete a one-hour course, and three days to complete a nine-hour course. According to plaintiff, he was not instructed to complete the courses in any specific amount of time.

In May 2001, plaintiff attended three courses at the Aeronautical Center in Oklahoma City. At these courses, plaintiff had to be reissued a new password and user codes because he repeatedly locked himself out of his computer. Although plaintiff passed the courses, he would not have passed two of them had he not been given back his exams to double-check the answers before final grading.

Plaintiff returned to Oklahoma City for a second round of courses in late June and early July 2001. Plaintiff passed these courses only after his final exams were returned to him for another review. Upon plaintiff's return from Oklahoma City, his co-workers who had also attended the course reported to Martinez that plaintiff had been an embarrassment as a student, and that he could not retain instructions. Martinez told plaintiff that he was extremely disorganized, that he was not grasping the fundamentals of his job, and that his retention of information was almost nonexistent.

Plaintiff asked another inspector, Theodore Willis, to provide him additional training. Willis trained plaintiff several times on ramp inspections. Willis observed that plaintiff was a good mechanic, but could not retain information on how to do the job functions, especially those done on the computer. Willis felt that plaintiff had technical abilities that were comparable to other trainees, but was operating at a lower level as an inspector than the others. Willis reported to Martinez that plaintiff did not retain information.

Plaintiff was terminated on September 5, 2001. Martinez made the decision to terminate plaintiff, and Martinez's supervisor, Robert Ritter, concurred. Plaintiff filed a discrimination complaint with the Department of Transportation, which made a finding of no discrimination on November 20, 2002. The Equal Employment Opportunity Commission affirmed the agency's final decision on April 29, 2003. Plaintiff filed this action on July 17, 2003.

**II. Discussion**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). The court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

Plaintiff claims that defendant discriminated against him based on his race, national origin, and age, by terminating him rather than allowing him to continue his training. Plaintiff may show discrimination under the ADEA and Title VII either by means of direct evidence, or through indirect evidence, using the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting method. See Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692-93 (7th Cir. 2000) (ADEA); Hildebrandt v. Illinois Dep't of Natural Res., 347 F.3d 1014, 1029 (7th Cir. 2003) (Title VII). Plaintiff attempts to establish his claims under both the direct and indirect methods.

Direct evidence of discrimination is "evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999) (quoting Cowan v. Glenbrook Sec. Servs., Inc., 123 F.3d 438, 443 (7th Cir. 1997)). Ordinarily, direct evidence consists of an admission by the decisionmaker that his or her actions were based on a discriminatory factor. See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus., 328 F.3d 309, 321 (7th Cir. 2003). Direct evidence of discrimination may also consist of circumstantial evidence that points directly to a

discriminatory reason for the employer's action. Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003).

Plaintiff points to only one statement by Martinez that he contends constitutes direct evidence that Martinez terminated him for discriminatory reasons. In an affidavit, Martinez responded to a question regarding whether plaintiff had made complaints based on race, national origin, or age by stating: "No. I have hired people of all races, national origin, and ages; I try to get a good mix." Plaintiff argues that this statement establishes that Martinez made employment decisions, including the decision to terminate plaintiff, based on discriminatory criteria.

The court disagrees. Statements offered as direct evidence of discrimination must "relate to the specific employment decision in question." Oates v. Discovery Zone, 116 F.3d 1161, 1170 (7th Cir. 1997). Even if Martinez's statement could be construed to mean that he used discriminatory criteria in hiring, plaintiff has offered no evidence that Martinez used discriminatory criteria in making decisions relating to existing employees. See Fuka v. Thomson Consumer Elecs., 82 F.3d 1397, 1403-04 (7th Cir. 1996) (evidence of discriminatory hiring practices insufficient to establish direct evidence that termination decision was based on discriminatory animus).

Plaintiff next claims that two of plaintiff's co-workers who, like plaintiff and Martinez were of Puerto Rican national origin, told Martinez that plaintiff was an embarrassment to Puerto Ricans. Plaintiff argues that this is direct evidence that Martinez terminated plaintiff in an effort to increase racial pride among the Hispanic employees. The evidence plaintiff offers falls far short of direct evidence of discrimination. The record indicates that, while the co-workers believed that plaintiff was an embarrassment to Puerto Ricans, they advised Martinez only that

7

plaintiff was an embarrassment as a student. In any event, plaintiff offers no evidence that these co-workers had any influence over Martinez's decision. Cf. Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1400 (7th Cir. 1997) (noting that a subordinate's prejudices may be imputed to a decisionmaker if the subordinate is able to influence the decision).

Finally, plaintiff offers evidence that some employees had expressed concerns to a union representative that Martinez was hiring a "Spanish Coalition" of less qualified employees, and that Martinez and Hispanic inspectors spoke Spanish to one another in the workplace. The union representative reported these concerns to Robert Ritter, Martinez's supervisor. Plaintiff argues that this is direct evidence that Martinez terminated plaintiff in an effort to reduce criticism of his hiring practices. Again, plaintiff's connection between these statements and Martinez's motivation is nothing but speculation. The court concludes that plaintiff has presented no direct evidence of discrimination.

Since Plaintiff has presented no direct evidence of discrimination, the court turns to the familiar McDonnell Douglas burden-shifting analysis. Under that analytical framework, to establish his discrimination claim, plaintiff must show that (1) he is a member of a protected class; (2) he was meeting defendant's legitimate performance expectations; (3) he was subjected to an adverse employment action; and (4) that similarly situated employees not in the protected class were treated more favorably. See Bennington v. Caterpillar Inc., 275 F.3d 654, 659 (7th Cir. 2001) (ADEA); Johnson v. Zema Sys. Corp., 170 F.3d 734, 742-43 (7th Cir. 1999) (Title VII). If plaintiff establishes a prima facie case of discrimination, defendant must then show a legitimate, nondiscriminatory reason for the employment action. See Peele v. Country Mut. Ins. Co., 288 F.3d 319, 326 (7th Cir. 2002). If defendant does so, plaintiff must then present sufficient

8

evidence to enable a trier of fact to find that defendant's explanation is pretextual. Id.

Defendant does not dispute that plaintiff is a member of a protected class, or that he was subjected to an adverse employment action when he was terminated. Nor does defendant argue that similarly situated employees not of the protected class were not treated more favorably. Instead, defendant contends that plaintiff cannot establish a prima facie case because he cannot show that he was performing his job satisfactorily.

Defendant has offered evidence that during the just-over six months that plaintiff was employed by the FAA, every inspector that provided training to plaintiff observed that he had significant difficulties retaining information. Several inspectors observed that plaintiff had trouble using computers, even after he took a course about computers and was given a laptop computer for practice at home. Plaintiff took longer than other employees to complete training courses, and passed several tests only after being given an opportunity to review his answers a second time. Plaintiff reached Level 2 training (observing a job function being performed) on only four tasks, and never reached Level 3 (performing a function under supervision) on any task.

Plaintiff counters that he met all of defendant's legitimate expectations. According to plaintiff, after he participated in an air base inspection in Wisconsin, three inspectors advised plaintiff of their favorable impression of his work. Plaintiff claims that these inspectors also advised him that they intended to recommend that his evaluation reflect that he had completed Level 3 (the highest level of training) on the tasks he had done. According to plaintiff, Rigg refused to allow the inspectors to provide plaintiff with a favorable evaluation. In support of these claims, plaintiff only offers his statements in his own affidavits that relate what the three inspectors told him. Affidavits supporting and opposing summary judgment must "set forth such

9

facts as would be admissible in evidence." Fed. R. Civ. P. 56(e). Since plaintiff's statements regarding what the other inspectors told him rely on inadmissible hearsay, the court must disregard them. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).

Plaintiff also claims that shortly before he was terminated, his completion rate for "Priority 1"[2] tasks was higher than or comparable to that of other trainees who had been employed by the FAA the same amount of time. As of August 28, 2001, when plaintiff had been employed by the FAA for six months, plaintiff had completed 11.1% of the Priority 1 tasks. Plaintiff observes that Quentin Cruz, an inspector who had been hired one month after plaintiff's hire, stated in an affidavit that he had completed only 6% of the Priority 1 tasks when plaintiff was terminated on September 5, 2001.[3] According to plaintiff, inspector Edy Mentor had completed only 7.9% of the Priority 1 tasks after six months of employment. Plaintiff contends that this evidence shows that he was meeting the same expectations defendant set for the other employees.

In response to defendant's contentions about plaintiff's performance, plaintiff argues that defendant could not have legitimately expected him to perform better than he did. On the issue of the speed of plaintiff's progress, plaintiff notes that Edy Mentor took as long as 32 months to complete his training, and that Latorre advised Martinez that plaintiff might be able to succeed if he was given two additional years of training. Plaintiff further notes that Rigg often was

---

[2] Priority 1 tasks are tasks that inspectors must master.

[3] The same August 28, 2001 progress chart that places plaintiff's Priority 1 task completion at 11.1% shows Cruz's to be 15.4%. The court resolves factual disputes in plaintiff's favor for the purpose of deciding defendant's motion for summary judgment. See Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1032 (7th Cir. 1998).

unavailable to train him as a result of Rigg's travel and work schedule. As for plaintiff's problems with computers, he offers evidence that other inspectors had had problems with the computer system. In addition, some other inspectors were allowed to handwrite certain reports and have assistants enter the information into the computer. Finally, plaintiff contends that he was passing his writing course at the time he was terminated.

The court concludes that plaintiff has not established that he was satisfactorily performing his job when he was terminated. The only evidence plaintiff offers that he was performing comparably to other inspectors of similar tenure is that his Priority 1 completion rate after six months of employment was higher than that of Quentin Cruz and Edy Mentor after a similar length of employment. However, plaintiff offers no evidence that Cruz or Mentor had trouble retaining information, or that their computer skills were as ill-developed as plaintiff's. Similarly, although plaintiff points to evidence that Mentor took as long as 32 months to complete his training, he offers no evidence that Mentor required the same type of intensive training efforts that plaintiff needed. Although Rigg's lack of availability to train plaintiff could be a reason why plaintiff took a longer time to complete tasks, it would not have affected plaintiff's ability to retain information from one day to the next. Plaintiff notes that other inspectors had trouble with the computer system, but offers no evidence that their trouble was as profound or long-lasting as his. Nor does evidence that other inspectors sometimes had assistants enter their information into the computer mean that inspectors were not required to have computer skills.

Plaintiff's negative evaluations were not made only by Martinez and Rigg, the two individuals that plaintiff contends acted unfairly toward him. To the contrary, every inspector that encountered plaintiff observed that plaintiff could not retain information. Although Latorre

11

believed that plaintiff might be able to succeed as an inspector given two additional years of training, he noted that significantly more intensive training would be required than was normally provided. Indeed, Latorre, who had trained nearly every inspector in the office, concluded that plaintiff was the weakest trainee he had seen in his eleven years on the job.

Defendant is charged with the weighty responsibility of protecting the safety of the flying public, and certainly can legitimately expect a certain level of competency from FAA inspectors. Here, the record shows that plaintiff simply did not meet defendant's legitimate expectations. The court concludes that plaintiff has not established that he was performing his job satisfactorily when he was terminated, and accordingly has not established a prima facie case of discrimination.

Even if plaintiff could establish the prima facie case, he has not established a genuine issue of fact as to whether defendant's proffered reason for his termination was pretextual. "A pretext, in employment law, is a 'phony reason' that the employer offers for engaging in discriminatory conduct...." Mills v. First Fed. Sav. & Loan Ass'n, 83 F.3d 833, 845 (7th Cir. 1996). Thus, at this stage of the McDonnell Douglas analysis, plaintiff would have to establish that Martinez did not honestly believe he was terminating plaintiff because of his unsatisfactory job performance. See Gordon v. United Airlines, Inc., 246 F.3d 878, 888-89 (7th Cir. 2001).

Plaintiff has offered no evidence that Martinez did not honestly believe that he was terminating plaintiff for his poor performance. Plaintiff claims that Martinez instructed Rigg to be hard on plaintiff, implying perhaps that Martinez was setting plaintiff up to fail. However, plaintiff's citations to the record do not support this claim. In addition, as noted above, plaintiff has offered no admissible evidence in support of his claim that Rigg prevented other inspectors from signing off on plaintiff's Level 3 tasks. Furthermore, as the court has discussed, plaintiff

has not shown that defendant's requirement that inspectors have computer skills was phony, or that Martinez allowed employees with comparable problems to continue their training.

There is abundant evidence in the record that plaintiff was *not* meeting the FAA's performance expectations. Moreover, Martinez himself had recruited plaintiff for the inspector position only six months before he terminated plaintiff, an act that would make little sense if Martinez was prejudiced against older Hispanic Puerto Ricans. See Herrnreiter v. Chicago Hous. Auth., 315 F.3d 742, 747 (7th Cir. 2002), cert. denied, 124 S. Ct. 472 (2003) (as a matter of common sense, the trier of fact may consider that the same individual hired and fired an employee). Plaintiff has not established that Martinez used plaintiff's poor performance as a pretext for discrimination.

**ORDERED:** Defendant's motion for summary judgment [11-1] is granted. Judgment in favor of defendant and against plaintiff will be set forth on a separate document and entered in the civil docket. See Fed. R. Civ. P. 58.

ENTER:

George W. Lindberg
Senior United States District Judge

APR 0 2 2004

DATED: _____

13